LECHE, J.
Sylvain Vidalat was divorced from his first wife, Eliza Bernadine Lupin, by judgment of the civil district court for the parish of Orleans, in the year 1893. Of this marriage there was born one daughter, Mrs. Blarie Louise Solanas, who has been appointed and confirmed as administratrix of her deceased father’s succession.
Mrs. Eliza Bernadine Lupin, divorced wife of Vidalat, was remarried about the year 1909 to one Bolian.
Sylvain Vidalat also remarried, and of his second marriage there was born another daughter, Mrs. Emma Julia Vidalat, now wife of Jean St. Jours. When Vidalat died on June 3,1922, he was therefore survived by his two daughters, who are his sole heirs, and by his divorced wife, Blrs. Eliza Bemadine Lupin; widow of Bolian.
Mrs. Marie Louise Solanas, administratrix, has filed her final account of administration, and on that account she places her mother, Mrs. Eliza Bernadine Lupin Bolian, as a creditor of the succession for the sum of $1,800. Blrs. Bolian opposes the account on the ground that she should be recognized -as a creditor in a sum exceeding $3,500. Blrs. Emma Vidalat St. Jours, surviving daughter *1008 by the second marriage, also opposes the account on the ground that Mrs. Bolian is not a creditor of the succession of her father, and is not therefore entitled to recover anything out of the assets of said succession.
The differences between the parties arise from the effect and interpretation to be given to a stipulation in a notarial act passed before Jules F: Meunier, notary public, on August 9, 1893, wherein the late Sylvain Vidalat and his divorced wife, E[iza Bernadine Lupin, made an amicable or private partition of the community that had theretofore existed between them.
The partition act, after describing the property which each of the spouses accepts for his and her share of the community, contains the following stipulation:
“It is further understood • and agreed by .and between said contracting parties hereto:
“(11 That the said Sylvain Vidalat shall pay to the said Mrs. Eliza Bernadine Lupin Vidalat the sum of $7 per week, on the Monday of each week, during the course of her natural life.
“(2) The said Sylvain Vidalat shall also furnish free of charge the daily market provisions, composed of fresh meat and vegetables, needed for the subsistepce of the said Mrs. Lupin Vidalat and of their daughter, Miss Marie Vidalat.
“(3) And furthermore the said Sylvain V’dalat shall from and after the 1st day of August, 1893, and during thp term of one year from said date, pay the sum of $11 per month, for the purpose of giving lessons in music and stenography to their said daughter, Miss Marie Vidalát.”
There is ■ nowhere in the notarial act, as written, any consideration mentioned, either expressly or by implication, for the three engagements thus assumed by Vidalat in the quoted stipulation. They were perhaps prompted by the affection which Vidalat then entertained for his only child and daughter. But the daughter whom he may thus have intended to benefit is now a married woman, and it appears to be more beneficial to her to secure her share of inheritance in her father’s succession than to havk these funds paid over to her mother. The only engagement, however, presently sought to be enforced by Mrs. Boliai is the one contained in the first paragraph' of the stipulation.
The evidence shows that Vidalat paid the $7 a week to his divorced wife until about 1910, or approximately one year after she was remarried. Mrs. Bolian was then out of the state, and living at Los Angeles, in California. Whether Vidalat ceased to make payments because of his poverty, as claimed in a letter to Mrs. Bolian’s attorneys, or because she had remarried is of no importance. The fact is that he neither promised to make nor did he make payments after the year 1910, and that no judicial demand was ever made upon -him thereafter, until the present opposition was filed to the final account of administration in his succession, in November, 1922. . So that, even if viewed from the standpoint of a personal obligation arising out of a valid contract, Mrs. Bolian’s claim is prescribed by the prescription of 10 years pleaded against her demand.
In our opinion, however, the alleged obligation upon which Mrs. Bolian predicates her demand is not a valid legal obligation. It is not an obligation imposed by law. The judgment divorcing the parties did not condemn Vidalat to pay alimony to his wife. If it had, the amount of the alimony'and the period for which it should be paid would have been\fixed by the judge as matters reviewable at all times by the court of proper jurisdiction ; the alimony varying according to the circumstances in which the parties would be situated, and certainly not extending in duration of time beyond the date when the wife remarried.
Nor has the alleged obligation any of the elements that constitute the contract of annuity as defined by article 2793 of the Civil Code. There was neither property nor a sum of money turned over to Vidalat by his di *1010 vorced wife, and therefore nothing upon which to base the payment of rent.
The so-called obligation was not entered into for any material consideration, and it appears to be solely a promise fo make certain donations. Such promises have never been held sufficient to constitute a valid obligation, and they are unenforceable. A mere .promise to give is not actionable.
The district judge held in effect that the obligation sued on was a nudum pactum; there being no -mutuality of obligation. He dismissed and rejected Mrs. Bolian’s demand.
Eor reasons stated, we believe his judgment is correct, and it is affirmed.